Good morning, Your Honors. May it please the Court, my name is Ron Holland. I'm counsel for Queen of the Valley Medical Center, and we're the appellant in this matter. With me is my co-counsel, Philip Schechter, and if I could, I'd like to reserve three minutes for rebuttal. The Court's familiar with this case. Procedurally, we're here on a merits appeal after filing an emergency appeal with the Court, and the Court's staying the district court's grant of a 10J injunction in a union dispute with my client. Injunctive relief, as you know, under Section 10J is an extraordinary remedy. It's permissible in circumstances where the petitioners demonstrated that the traditional criteria under winter are met. Although the district court ruled that the region met the threshold and the criteria under winter, the Court failed to observe longstanding NLRB precedent, failed to meaningfully engage that precedent, and failed to articulate the facts upon which it relied to determine that the hospital had engaged in unconditional bargaining in a waiver of its statutory rights. Specifically, the Court made three reversible errors. With regard to the likelihood of success on the merits first, the Court concluded that the hospital unconditionally bargained from the time of the election through the certification of the results. Now, it's clear under a Supreme Court precedent, Brooke's case specifically, that there is no duty to bargain from the time of the election through certification. The duty to bargain kicks in upon the certification of results. The district court found that the conduct or the bargaining upon which it was relying to grant the injunction began at the time of the election through certification and thereafter. For that reason, the district court's legal conclusions are faulty, and that's sufficient to overrule the injunction and, excuse me, vacate the injunction. Second, the Court found that the hospital unconditionally bargained with the union while its request for review was actually pending before the Board. However, the conclusion ignored black-letter law, black-letter NLRB law, cases cited to the Court, Fred's, GKN Metals, Overland Transport, and then, of course, Justice Ginsburg's decision in Terrace Gardens out of the D.C. Circuit as to what constitutes conditional and unconditional bargaining. Those cases teach us that an employer cannot do both. An employer can either test certification or bargain. And in those cases ---- Sotomayor, I don't think there's a dispute about that. The question is whether or not you engaged in any bargaining. Is it not? Well, the ---- that's how the government would like to frame the issue, any bargaining. But the cases don't ---- the Board precedent doesn't say that an employer waives its right by engaging in any bargaining. Any bargaining could be conditional bargaining. Any bargaining could be bad-faith bargaining. There are no waiver cases cited by the government. Arguably, this is actually a case of first impression before the Court. There are no cases cited ---- But the law is pretty clear, is it not, that you can't bargain and then refuse? The law is clear that you can't recognize a union, bargain, and then withdraw that recognition. Separately, the law is clear that when an employer post-election continues to contest the results of the election or the processes of the election, any so-called bargaining during that time is actually conditional. And because it's conditional, the Board concludes that it's ---- ironically, it includes that it's bad-faith bargaining. And certainly, bad-faith or unlawful conditional bargaining can't be sufficient to waive a party's statutory right to protest or challenge the results of an election conducted by the National Labor Relations Board. Can I answer your question, Your Honor? So you're arguing that you can engage in bargaining in bad faith and not commit an unfair labor practice? No, Your Honor. Indeed, engaging in bad-faith bargaining is an unfair labor practice. However, if you're engaged in an unfair labor practice or bad-faith bargaining, that is insufficient, and the government cites no case that that in and of itself is sufficient to vitiate a party's simultaneous challenge to the results of the election through the Board's mandated procedures. But here, the employer waited two weeks until after certification to file the protest or to file a request for review. And during that period of time, the Queen Valley Medical Center continued to negotiate with the union. Didn't they? I mean, so in other words, the district court consider the context of all the discussion, not just in this discussion's pre-certification. Judge, do let me try to answer your question in steps. The election was in November of 2016. November 15th. Correct. Objections were filed on November 22nd, 2016. Those objections were considered by the region and eventually overruled on December 22nd, 2016. Statutorily, and according to the Board's rules and processes, my client had 14 days within which to file its request for review, and it did so timely. And the government makes no argument that our request for review was somehow waived during that period of time. The Board doesn't address that issue in its decision on the request for review, nor does the region, the NLRB, take that position that it was somehow waived during that time between 12-22 and January 9th. The government offers little, if any, conduct by the hospital that would amount to bargaining. In fact, I believe that there was a request regarding an employee, Rene Froger's schedule. There was a request for information that was made by the union that went unresponded to between 12-22 and January 9th. So now the hospital is safely at filing its request for review, not only because the Board allows it 14 days to do so, but there's no conduct that would amount to bargaining or unconditional bargaining during that period of time. But my point is, you can't just look at conduct during that two-week time frame. You have to look at the course of dealings between the parties, which is what the district court did in looking at the communications about terms and conditions of employment before the certification. And you seem to take issue with that, that she committed clear error because she considered conduct pre-certification to determine the whether or not there was certification and then whether there was bargaining and then withdrawal of bargaining. Yes, Your Honor. We take issue with it for a few reasons. One, the duty to bargain doesn't kick in until certification issues by Supreme Court authority. Therefore, there was no duty to bargain and there was no actual bargaining during that time. And the record is void of any actual bargaining during that period of time. And I'm trying to take it in segments to focus the Court not only on the legal authorities, but also the factual support for the district court's conclusion that the hospital actually engaged in bargaining. And so the record is void of any conduct by the hospital that would amount to bargaining from 12-22 to January 9. Well, the certification took place in December? December 22, yes, Your Honor. Bus for review was denied on February 28? That's correct, Your Honor. Was the first time that the Queen Valley Medical Center indicated that it was bargaining conditionally occurred in that March 24 letter? No, Your Honor. Queen of the Valley Expressly stating that, I mean. Well, no, Your Honor. We would submit that Queen of the Valley put the union on notice that it was contesting or challenging the union's certification When did it do that? It did so by filing its objections and serving them on the union. Because the law says we must notify the union of our challenge to their certification. That was when you requested review? So when we filed the objections, then when we requested review and served that on the union, and then subsequently in a January 17 memo to all employees, which was posted, and in fact the union submitted, Larry Combs, the CEO, informs employees that the appeal process is continuing, yet we're prepared to go ahead and negotiate with the union upon their request. However, we'll need to see how the appeal process goes. But my point is the first time that the employee informed the union that he was bargaining conditionally did not occur in that March 24th letter. Well, you know, Your Honor, I would differ with you on several levels. One is, again, the process, either the process to challenge the certification of a union and the election results through the board, or if you look at the technical refusal to bargain process, is objections are filed because you need to preserve that argument. A request for review is filed. And then if the request for review is denied, at some point an employer would arguably need to let the union know. So the request for review was denied on February 28th. Yes, Your Honor. And then, if I understand it, then the employer asked for bargaining information and it would respond because it wanted to know the employees that the union's representing and it would respond as data became available. And so then they start talking about when they're going to have their first bargaining session. Your Honor, the employer didn't ask for information. You provided the information. Some information had been provided earlier. On the record, no information was provided post-denial of the request for review. In fact, what the union was asking for, it was asking for the employer to revisit its earlier January 10th request for information. Ironically, the January 10th request for information that went unfulfilled to the union by the employer was the basis of a bad-faith bargaining charge and unfair labor practice. If I understand this correctly, you probably want to save some time for rebuttal, but if I understand this correctly, there is really no disagreement over the law. The question is really whether there was any bargaining that took place after the denial of review. I would say that there is wholeheartedly a disagreement in the law, because the Board is taking the position, the government is taking the position that any interaction that could constitute bargaining, not bargaining for a first contract, any isolated or piecemeal engagement with the union by any supervisor at any level while a request for review is pending would actually waive the right to continue to test certification. And so there's a wholeheartedly there's a significant disagreement on the application of Board law. But what you did did not amount to bargaining. It didn't amount to bargaining and it certainly didn't amount to unconditional bargaining under the cases that we've cited. Thank you. Thank you, Your Honor. We'd still like to reserve a few minutes for rebuttal. May it please the Court. My name is Rebecca Johnston. I represent the Regional Director on behalf of the National Labor Relations Board. An injunction in this case is warranted. After the employees of Queen resoundingly elected the union as our collective bargaining representative, Queen engaged the union, bargained with it, then on March 16th abruptly withdrew recognition and stopped bargaining with the unit. This unfair labor practice has caused harm and is continuing to cause harm. And a final Board order would not be sufficient to remedy these harms. To start a bit on the merits, I just want to remind the Court that this is not a merits determination. You do not need to decide this on the merits. The Regional Director simply must show some evidence together with an arguable legal theory and we have clearly done so here. Faced with the certification of a union, an employer has two options. It can recognize and bargain with the union or it can refuse to bargain with the union, triggering an unfair labor practice and then defend against that unfair labor practice by claiming that the certification was improper. Here, Queen decided to begin negotiating with the union from the time of the election through to its withdrawal of recognition. And I would just like to make a correction that the duty to bargain, the bargaining obligation starts upon the election, not upon the certification. There's an oft-cited Board case, Mike O'Connor, that holds for this principle. That's 209 NLRB 701. So I don't think there's legal error in the District Court's decision on that. Let's assume even, because they seem to be arguing, well, we didn't really have to do anything until they denied review. But even if you take that as the time, could you address whether there was bargaining after that time? Yes, the conduct towards the union remained unchanged after the denial of the request for review and they continued to bargain on a number of issues. For example, one of the managers gave the union dates to bargain over changes to phlebotomist schedules. There was extensive bargaining in the sterile processing department. In its reply brief, the employer tries to downplay the role of the union during those negotiations, but a close read of the record shows how heavily involved the union was in negotiating issues in the sterile processing department, not only with schedules, but with issues with a supervisor. And I would also point the Court to the ALJD's decision, which came out after we briefed the case. And in that decision, she goes through the factual basis for finding bargaining in these different instances. And she had the benefit of a full hearing rather than just affidavits. In addition to those issues, the employer was offering an employee her Weingarten representative in an interview that could lead to discipline. Contrary to what the employer said, they did provide more first contract bargaining information. They also promised to provide dates for first contract bargaining, although they never did provide those dates. And there were negotiations in the pharmacy department with bargaining team members that the union was sort of peripherally involved in. So there was bargaining after the denial of the request for review. Would you clarify the record with respect to the dispute as to whether there were union representatives present at the March 2nd meeting? Yes, Your Honor. There was a union representative present for part of the meeting. The meeting was dealing with issues with a supervisor and scheduling issues. Hilda Polson was there on behalf of the union for part of the meeting, and then I believe she left. And in the last bit of the meeting, they discussed scheduling issues directly with the employees. So the information in the corrected affidavit is correct. I believe we don't cite to any of the affidavits that were corrected. We're using Ms. Polson's affidavit. I believe it's what we cite to. I thought there was an affidavit that was corrected at I'm trying to remember the exorbitant record. Maybe it was at 278? 178? Regardless, I wanted to have that issue clarified, but it seems to me that the employer's argument is we couldn't be clearer in indicating that we were only bargaining conditionally by filing a protest of the election results and by requesting for review of the certification. It seems to me that the region's position is the employer has to clearly state its intent, despite pursuing the legal process, that it was only negotiating conditionally. What more could have been done? Your Honor, simply by virtue of going through the motions of challenging the election before the board is not enough to give the union notice that any of its communications with the union are contingent upon that election challenge. What they should have done is what the employer in some of these other cases did and they should have said, look, we will sit down and talk to you about this, but please know that any negotiations that happen are contingent upon this election challenge. And if you look at their March 16th letter, that's exactly what they did. That's an example of conditional bargaining. They said we'll sit down and talk to you, but any negotiations or any agreement we reach is subject to this test of certification and they also acknowledged the waiver principle and tried to get the union to agree that if they did meet with them, it wouldn't constitute a waiver. And that was too late? But that was too late because they had already recognized the union and extensively bargained with it. I'd also like to discuss the irreparable harm for a bit and I will say that the sliding scale still survives post-winter and if the director shows that the irreparable harm tips sharply in its favor, then we need only show serious questions as to the merit. The irreparable harm does tip sharply in our favor. As this court noted in Avanti, these types of irreparable harms flow naturally from this type of unfair labor practice where an employer is refusing to bargain with a union, the union's strength begins to diminish. The union relies on its strength in order to bargain for a good contract. So the longer the employees are without union strength and the longer the employees are without the benefit of the union as a representative, the more disenfranchised they become. They lose momentum and once the board issues its order, which could be up to two years away, this diminished support is very difficult to maintain. The union has a lot of power in the hands of the negotiations. They could negotiate for a contract sale, but it could be a poor contract and the union won't have the power of the strike at that point. So if the employer strings things out and hedges and talks to the union but then says, we're not really talking, the union will lose support. And that's not supposed to happen, I take it. Yes, Your Honor. Delay is clearly on the employer's side. And also in this case, sowing confusion is clearly on the employer's side. For a time, they were bargaining with the union and the union saw some results. They have this kitchen closure agreement that they negotiated and was ratified by union members. After the employer withdrew recognition, that kitchen closure agreement went away. They said, we don't have to abide by this anymore. That's confusing for employees. They saw their union get results and then they saw those results disappear. So that's the type of irreparable harm that we're worried about here. But not only does it naturally flow from the type of unfair labor practice, but there are concrete examples of irreparable harm in the record. There's a decline in attendance at union meetings. There are specific employees who are fearing retaliation based on this other retaliation claim. There's a stepping back of union participation. Some employees have even resigned their employment there. And there's a feeling of frustration and that the union is impotent. Employees are now resistant in fighting additional unilateral changes and are just simply confused about whether the union is there in the first place. The irreparable harm in this case is very strong. Queen has identified no real concrete harm of its own. It claims that it will be incredibly onerous for it to unravel unilateral changes. But I'd like to remind the Court there are only three unilateral changes that were alleged in the petition. Any of the additional ones that they cite as sort of a parade of horribles in their briefing are not before the Court. It's simply a change in one of the unilateral changes. It's a change in the exemption of union access to the facility and changes and rescinding the kitchen closure agreement. Are there any questions? None here. There are no further questions. I'd just submit that interim relief is necessary to protect the Board's remedial authority and the Court should uphold the District Court's injection. Thank you. May I just address a few points, Your Honor? We've thrown around the term bargaining and what is actually bargaining and what is not. The employer in this case, the government hasn't cited a single case involving facts similar to what we have here, where an employer responded to an information request and lost their right to test certification, where an employer engaged a union on an isolated issue and lost their right to test certification. Each of the cases cited by the government are where the employer gave up after the request for review, said, I'm going to sit down with you and bargain for an initial collective bargaining agreement and did so for a substantial period of time, years in fact. Here we're talking about, at best, two weeks and we're talking about the protected period prior to that. The government submits that in the protected period prior to that any type of bargaining, good faith, bad faith, conditional or unconditional, would be enough to make it clear that it wanted to bargain as opposed to test certification. And Terrace Gardens teaches us that the board had to make a decision on this. The board had to decide, are we going to do it on a case-by-case basis? Are we going to treat it as bargaining? Or are we going to say, no, you continue to contest certification and until you disavow that, as they say, as the board says in FREDS and GKN, until you actually disavow it, we're not going to consider this GKN. Interestingly enough, the employer tried to defend itself by saying, look, the other day we told the union, we recognize you and we're going to bargain with you. And then actually sat down and bargained. And the board said, that's not enough. You have an affirmative defense in your answer to the complaint that says you're continuing to contest certification. Until you disavow that, we're not going to call this unconditional bargaining. And so to accept the government's position is, if we engaged in bad faith bargaining, if we engaged in conditional bargaining but we didn't disclaim impractically each time, that would be sufficient. And we submit that it wouldn't. If I can, Your Honor, just deal with irreparable harm briefly? We'll give you 10 seconds, but your time has expired. You're in the red. Thank you, Your Honor. I'm impassioned, Your Honor. The government failed to carry its burden. We submit that this diminishing attendance at union meetings, we're talking about two different types of meetings. We're talking about bargaining committee meetings, of which there are only 30, and dropping from 30 to 15 when there's an issue of whether there's bargaining and that is insignificant. But the issue is union support. Is there union support? We're talking about a bargaining unit of 429 individuals. One questions whether demonstrating that the union had 30 people show up at a meeting of 429 demonstrates union support to begin with. We understand, Your Honor. Thank you, Your Honor. Thank you. The matter just argued is submitted for decision.
judges: Schroeder, Gould, Du